

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LILLIE WILLIAMS,

        Plaintiff,

-v-

BUFFALO PSYCHIATRIC CENTER,

        Defendant.

---

1:17-CV-223-LJV-MJR

REPORT, RECOMMENDATION and ORDER

This case has been referred to the undersigned by the Honorable Lawrence J. Vilardo for all pre-trial matters, including preparation of a report and recommendation on dispositive motions. (Dkt. No. 5). Before the Court is defendant's motion to dismiss plaintiff's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, respectively. (Dkt. No. 4). Also before the Court is plaintiff's motion for appointment of counsel. For the following reasons, it is recommended that defendant's motion to dismiss be granted and plaintiff's motion to appoint counsel be denied.

## PROCEDURAL HISTORY

Plaintiff Lillie Williams ("plaintiff") filed this *pro se* action on March 13, 2017 asserting causes of action under Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e, *et seq*, based on employment discrimination. (Dkt. No. 1). On the same date, plaintiff also filed a motion for leave to proceed *in forma pauperis*. (Dkt. No. 2). Judge Vilardo granted *in forma pauperis* status and directed the United States Marshal to executed service of the summons and complaint. (Dkt. No. 3).

On November 6, 2019, defendant brought the instant motion to dismiss plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that plaintiff's claims are time-barred and fail to state a claim for which relief can be granted. (Dkt. No. 4). In the alternative, defendant moves for an order directing plaintiff to file a more definite statement of her claim or claims. (*Id.*). Plaintiff has not filed a response to the motion. On February 13, 2020, plaintiff filed a motion to appoint counsel. (Dkt. No. 7). Included with that motion was an unsworn statement from plaintiff titled "Deposition" which restates the allegations contained in her complaint and provides additional factual allegations. (*Id.*).

The Court heard oral argument on the motion to dismiss on March 9, 2020. At that time, the Court directed the plaintiff to supply the Court and defense counsel with a copy of the first complaint she filed with the United States Equal Employment Opportunity Commission ("EEOC"), as well as other additional documents for the Court's consideration. Plaintiff filed two letters with various documents attached on March 16, 2020 but did not provide a copy of her first EEOC complaint. (Dkt. Nos. 10, 11). At that time, the Court considered the matter submitted for decision.

## RELEVANT FACTS and BACKGROUND

Plaintiff Lillie Williams brings this action for employment discrimination against her former employer, Buffalo Psychiatric Center[1] ("BPC"). Plaintiff alleges that she was terminated from her employment, harassed, subjected to a hostile work environment, and retaliated against on the basis of her race. (Dkt. No. 1, pgs. 8-9).

The complaint states that plaintiff was first hired by BPC as residential counselor in 2007. (*Id.* at 6). In 2010, she was given a temporary position as a residential program

---

[1] BPC is a division of the New York State Office of Mental Health. *See* N.Y. Mental Hyg. § 7.17(b).

manager. (*Id.*). That became a permanent position in 2013. (*Id.*). Plaintiff states that she was the only black program manager; all other program managers at the facility were Caucasian. (*Id.*). Her immediate supervisor, William Nemetti, and his supervisor, Nancy Johnson, were both white. (*Id.*).

Plaintiff's role involved supervising one unit of a multi-unit outpatient facility for the mentally ill known as the Residential Care Center for Adults. (*Id.*). Plaintiff states her responsibilities included acting as both a program manager and as a case manager for residents due to a staffing shortage. (*Id.*). At some point, plaintiff's supervisors developed a new service plan to transition more residents from BPC facilities into less restrictive community settings, such as rooming housing, family homes, group homes, and apartments. (*Id.*). Plaintiff's responsibilities included identifying potential housing, transporting residents to housing interviews, and approving withdrawals of residents' own funds to make purchases for household and personal needs. (*Id.* at 7). Plaintiff was authorized to approve resident spending of their funds up to certain amount and any amount in excess required approval by a director. (*Id.*).

Program managers were also issued New York State credit cards to facilitate housing transitions. (*Id.* at 7-8). Managers could make purchases for residents with limited personal funds and supplemental needs. (*Id.*). Credit card purchases from State funds had to be approved by a supervisor. (*Id.*). Plaintiff claims that when she was hired as a program manager she did not receive a State credit card, even though all other white program managers, and some white counselors, had credit cards. (*Id.*). She alleges that she had to file a complaint in order to obtain a credit card to carry out her responsibilities. (*Id.*).

Plaintiff further alleges that she was singled out to be audited for spending, even though she never received any reprimand or warning from her immediate supervisor related to spending or withdrawals. (*Id.* at 8). Plaintiff claims that she never unilaterally approved any resident spending or used the State credit card without prior approval from her immediate supervisor. (*Id.*). Plaintiff notes that when the new plan for increased housing transitions was implemented, spending for residents necessarily increased as they moved to independent living. (*Id.*). Plaintiff alleges that she was treated disparately based on her race in that other white program managers were never reprimanded or audited for spending. (*Id.*).

Plaintiff alleges that, at some point in 2011, she was singled out for making too much overtime, and her hours were reduced. (*Id.* at 8-9). She states that she was also singled out to be evaluated by Nancy Johnson, her boss's supervisor. (*Id.*). She alleges she was the only program manager to be evaluated by someone other than their immediate supervisor. (*Id.*). Plaintiff alleges she became "the only target of a hostile work environment, and abusive humiliating language directed toward the Plaintiff on account of her race by [Ms. Johnson]." (*Id.* at 9). Plaintiff alleges Ms. Johnson initiated the investigation of her for overspending and accruing too much overtime. She also states that Ms. Johnson began a "campaign of retaliation" against her because plaintiff filed a "work place violence" complaint against Ms. Johnson. (*Id.*). Plaintiff attaches to her complaint a copy of a Buffalo Psychiatric Center Workplace Violence Reporting Form dated March 3, 2013. (*Id.* at 37-39). That report states that Ms. Johnson yelled at plaintiff and other staff on October 29, 2012, February 4, 2013, and March 13, 2013, causing

plaintiff to suffer psychological abuse, verbal abuse, and feelings of disrespect, humiliation, and feeling threatened. (*Id.*).

Plaintiff alleges that she was placed on administrative leave on December 16, 2013, based on allegations by the "Business Office [D]irector, Thomas Dobson" that plaintiff had misappropriated funds. (*Id.* at 8; 17). Plaintiff states she has not worked at BPC since 2013. (*Id.* at 3). Plaintiff alleges she was suspended on June 5, 2014 following BPC's internal investigation of these allegations. (*Id.* at 17; 26). Plaintiff alleges she was terminated on April 30, 2016, (*id.* at 32), but the EEOC found that plaintiff was notified of her termination on June 5, 2014 (Dkt. No. 10-4 at 11).

Attached to plaintiff's complaint are several records showing the administrative filings that plaintiff has made regarding these claims with the New York State Division of Human Rights, New York State Office of Mental Health, and EEOC. (Dkt. No. 1 at 11-36). Each of the attached complaint and charge forms appears to be based on the same allegations which are made in this complaint.[2]

On November 4, 2015, the NYS Division of Human Rights issued a determination that there was no probable cause to believe the BPD engaged in the unlawful discriminatory practices complained of by plaintiff. (*Id.* at 11-14). The agency concluded, after investigation, that there was no evidence in the record to show plaintiff was subjected to differential treatment or was disciplined because of her race or color or in retaliation for filing an internal or EEOC discrimination complaint. (*Id.*).

On February 6, 2017, the New York State Office Mental Health advised plaintiff that it had dismissed her complaint following an investigation. (*Id.* at 15).

---

[2] One complaint is undated; others are dated March 13, 2013, July 14, 2014, June 1, 2015, and October 27, 2016.

Plaintiff was issued two Dismissal and Notice of Rights ("right-to-sue") letters by the EEOC stating that the EEOC was unable to conclude the information obtained established violations of the statutes. (*Id.* at 16, 36). The first notice is dated June 30, 2014 and is identified as EEOC Charge No. 846-2014-111217. (*Id.* at 36). The second notice is dated December 14, 2016 and is identified as EEOC Charge No. 525-2016-00834. (*Id.* at 16). Plaintiff states in her complaint that she received a "right-to-sue" letter on December 17, 2016. (*Id.* at 5).

Plaintiff also filed a copy of correspondence from the EEOC dated October 21, 2016 relative to EEOC Charge No. 525-2016-00834. (Dkt. Nos. 1, pgs. 29-30; 10-4, pgs. 9-11). It contains a "Charge of Discrimination" form which is a summary of plaintiff's claims. (Dkt. No. 10-4, pg. 11). That document states, in part, the following:

> The record shows that you were notified of your termination on June 5, 2014, prior to the date you filed EEOC Charge 846-2014-11217. The termination decision went through a lengthy arbitration process. Your ultimate termination at the conclusion of the lengthy arbitration process relates back to events that were investigated as part of EEOC Charge 846-2014-11217. There is no evidence of discriminatory animus based on your race or color. We are unable to support a retaliation basis in that you were notified of the pending actions against you prior to filing EEOC Charge 846-2014-11217.

(*Id.*).

During oral argument on defendant's motion to dismiss, plaintiff was directed to file with the Court a copy of the "Charge of Discrimination" claim she filed under EEOC Charge No. 846-2014-11217 which resulted in the June 30, 2014 "right-to-sue" letter. Plaintiff did not provide said documentation.

## DISCUSSION

I. <u>Rule 12(b)(6)</u>

a. <u>Materials to Consider in Deciding Rule 12(b)(6) Motions</u>

The Court must first determine what materials it may consider in resolving defendants' motions. "In determining the adequacy of a claim under Rule 12(b)(6), consideration is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991). Affidavits generally may not be considered on a Rule 12(b)(6) motion to dismiss. *See Friedl v. City of N.Y.*, 210 F.3d 79, 83 (2d Cir. 2000). However, the Court may consider affidavits, memoranda of law, and other materials outside the complaint relied upon by a *pro se* plaintiff so long as they are consistent with the *pro se* complaint. *See Lopez v. Cipolini*, 136 F. Supp. 3d 570, 579 (S.D.N.Y. 2015); *see also Drake v. Delta Air Lines, Inc.*, 147 F.3d 169, 170 n.1 (2d Cir. 1998) ("[W]e deem [the *pro se* plaintiff's] complaint to include the facts contained in his memorandum of law filed in response to [the defendant's] motion to dismiss.").

Here, plaintiff attached numerous documents to her complaint, which the Court has considered in reaching its recommendation. Although plaintiff failed to file a response in opposition to defendant's motion to dismiss, she filed an unsworn declaration after the motion was brought. (Dkt. Nos. 7). At the Court's direction, the plaintiff also made two supplemental filings on March 16, 2016. (Dkt. Nos. 10, 11). Those contain correspondence, unsworn statements, and additional documentation of plaintiff's administrative complaints and employment records. (*Id.*). The letters and attached

documents largely reiterate the allegations within the complaint and duplicate the attachments to it. Despite this, given Williams's status as a *pro se* litigant, the Court will deem the facts contained in her declaration, letters, and attached documents to be part of her complaint. Consideration of these additional factual allegations supports the Court's recommendation as to the disposition of defendant's motion to dismiss.

### b. Rule 12(b)(6) Pleading Standard

A motion to dismiss on statute of limitations grounds is generally treated as a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), as opposed to Rule 12(b)(1). *See Cole-Hill v. Colvin*, 110 F. Supp. 3d 480, 483 (W.D.N.Y. 2015); *see also Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989) ("Such a motion is properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted rather than a Rule 12(b)(1) motion to dismiss for lack of jurisdiction over the subject matter.")

A defendant may move to dismiss a complaint on the ground that the complaint fails to state a claim on which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). In order to state a claim on which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). In deciding a Rule 12(b)(6) motion, the Court accepts all factual allegations in the complaint as true, drawing all reasonable inferences in the plaintiff's favor. *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). Application of the motion to dismiss standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Where, as here, the plaintiff is proceeding *pro se*, the complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) ("It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they *suggest*.'") (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)). That said, even a *pro se* complaint must be dismissed if it does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

II.   *Timeliness of Civil Action*

The Equal Employment Opportunities Act creates a cause of action for aggrieved persons to bring a civil action against a government, governmental agency, or political subdivision respondent if an acceptable conciliation agreement is not reached by the Commission, and the Attorney General has not filed a civil action in district court against the governmental entity. *See* 42 U.S.C. § 2000e-5 (f)(1). The Attorney General must notify

the person aggrieved and, within ninety days after such notice, a civil action may be brought against the respondent named in the charge by the person claiming to be aggrieved. *See id.* In other words, in order to be timely, a Title VII claim must be filed in federal district court within 90 days of the claimant's receipt of a "right-to-sue" letter from the EEOC. *See Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 37 (2d Cir. 2011). There is a presumption that a notice provided by a government agency was mailed on the date shown on the notice, and that a mailed document is received three days after its mailing. *See id.* (citations omitted). "Once the defendant contests the issue [of timeliness under § 2000e-5 (f)(1)], the plaintiff bears the burden of establishing that she filed her claim within 90 days of receiving the notice." *Bryant v. United States Steel Corp.*, 428 Fed. Appx. 895, 897 (11th Cir. 2011).

The Second Circuit has held that if a plaintiff receives a first right-to-sue letter, fails to bring an action within next 90 days, and subsequently secures a second right-to-sue letter based on a charge involving exactly the same facts as the first notice, the plaintiff is time-barred from bringing the case to court. *See Lo v. Pan American World Airways, Inc.*, 787 F.2d 827, 828 (2d Cir. 1986) (per curiam); *see also Haygood v. ACM Med. Lab., Inc.*, 642 Fed. Appx. 27, 28 (2d Cir. 2016) (summary order) (upholding district court's decision to grant a motion to dismiss where a plaintiff received two "right-to-sue" letters based on two "substantially identical" charges of discrimination, one of which made the civil complaint untimely and the other having been issued within ninety days of the civil action being commenced). In *Lo*, the Court reasoned that such actions must be time-barred, "[o]therwise, the time limitations of 42 U.S.C. § 2000e-5(f)(1) would be

meaningless, because potential Title VII plaintiffs could evade those requirements simply by seeking additional Notices of Right to Sue whenever they pleased." *Id.*

Here, Plaintiff received two "right-to-sue" letters from the EEOC: the first dated June 30, 2014 and the second dated December 14, 2016. Both EEOC letters informed plaintiff that she must file a lawsuit within 90 days of receipt or else her right to sue on the charge would be lost. Plaintiff initiated this action on March 13, 2017, which is 86 days after her presumptive, and stated, receipt of the more recent notice on December 17, 2016. But, plaintiff's first "right-to-sue" letter was issued in 2014, two years and eight months before she filed this civil action. An action based on the first EEOC decision is untimely. Therefore, any events or conduct that were alleged in her first EEOC charge of discrimination must be dismissed. *See Emerick v. Wood River-Hartford Sch. Dist. No. 15*, 16-CV-0788-MJR-RJD, 2017 U.S. Dist. LEXIS 99343, *25 (S.D. Illinois 2017) ("[...] the Court will not apply a 90-day bar to claims that are new to the second EEOC charge.").

The Court cannot compare the contents of the two EEOC complaints because plaintiff has only provided the latter complaint. However, the facts and timeline lead the Court to infer that both EEOC complaints contained "substantially identical" allegations of discrimination. The Court reaches this conclusion after considering the time-limited circumstances supporting these allegations. Plaintiff's claims derive from alleged discriminatory conduct by her supervisors during her employment with BPC, which eventually resulted in her termination. The facts alleged show that plaintiff's last day of work at BPC was December 16, 2013, when she was placed on administrative leave.

Plaintiff was then terminated on June 5, 2014.[3] Therefore, all discriminatory acts alleged by plaintiff in this suit occurred prior to the first EEOC decision on June 30, 2014.

Plaintiff was afforded an opportunity to demonstrate that her second administrative complaint contained new claims from her first charge, but she failed to do so. Based on the factual allegations presented by plaintiff and the record before the Court, the Court must conclude that the allegations included in the earlier complaint are substantially overlapping with, if not identical to, those stated in the latter complaint.

Thus, plaintiff was required to commence a civil action within 90 days, plus three days for mailing, of the June 30, 2014 right-to-sue letter. Plaintiff instituted this suit by filing her complaint on March 13, 2017, more than two years after that expiration. Therefore, plaintiff's claims are thus time-barred and should be dismissed for failure to state a claim upon which relief can be granted under Rule 12(b)(6). [4]

## Defendant's Other Arguments Not Reached

Defendant further argues that plaintiff's claims are untimely under 42 U.S.C. § 2000e-5 (e)(1), requiring that an administrative charge of discrimination must be filed within 300 days of the alleged unlawful employment practice. Defendant next asserts that Plaintiff's allegations of hostile work environment are insufficient to support such a claim under the pleading standard. Lastly, defendant argues that, if plaintiff's claims were to

---

[3] As noted above, plaintiff alleges that she was not terminated until April 30, 2016. However, the EEOC records submitted by plaintiff make clear that the termination decision was made on June 5, 2014, prior to the date the first charge was filed. The final termination decision which occurred after arbitration proceedings related back to the events of plaintiff's first EEOC charge and investigation.

[4] In general, plaintiffs may only revive lapsed claims through equitable tolling. *Tademy v. Union Pac. Corp.*, 520 F.3d 1149, 1168 (10th Cir. 2008). Here, plaintiff does not contend that the statute of limitations should be equitably tolled based on extraordinary circumstances, nor does the complaint provide any factual basis for equitable tolling. *Martinez v. N.Y. City Dep't of Corr.*, 18-Civ-2954-LGS, 2019 U.S. Dist. LEXIS 115466, *5 (July 10, 2019 S.D.N.Y.) (citing *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003)).

survive this motion to dismiss, plaintiff should be directed to file a more definite statement of her claims in accordance with the Rule 8(a)(2) pleading standard. Based on the finding that plaintiff's claims are untimely, the Court does not reach defendant's additional arguments.

## CONCLUSION

For the foregoing reasons, it is recommended that defendant's motion to dismiss (Dkt. No. 4) be granted.

In light of the recommendation for dismissal, it hereby ORDERED that plaintiff's motion to appoint counsel (Dkt. No. 7) is DENIED as moot without prejudice to refiling in the event defendant's motion to dismiss is not granted by the District Court.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ORDERED that this Report, Recommendation and Order be filed with the Clerk of Court.

Unless otherwise ordered by Judge Vilardo, any objections to this Report, Recommendation and Order must be filed with the Clerk of Court within fourteen days of service of this Report, Recommendation and Order in accordance with the above statute, Rules 72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure, and Local Rule of Civil Procedure 72. Any requests for an extension of this deadline must be made to Judge Vilardo.

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report, Recommendation and Order WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.*** See *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *See Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988).

Pursuant to Local Rule of Civil Procedure 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." **Failure to comply with these provisions may result in the District Court's refusal to consider the objection.**

**SO ORDERED.**

Dated:   September 30, 2020
         Buffalo, New York

_____
MICHAEL J. ROEMER
United States Magistrate Judge